UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL LYNN EAVES                                                                    Plaintiff

v.                                                            Civil Action No. 3:21-cv-P296-RGJ

DAGON MOON, *et al*.                                                              Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Lynn Eaves filed the instant *pro se* prisoner 42 U.S.C. § 1983 action. The Second Amended Complaint [DE 37][1] and the Supplement to the Second Amended Complaint [DE 55][2] are now before the Court for initial screening pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will allow some of Plaintiff's claims to proceed and dismiss other claims.

## I. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff was a convicted inmate at Luther Luckett Correctional Complex (LLCC) at the time pertinent to this action. In the Second Amended Complaint [DE 37], he sues the following Defendants: Dagon Moon, a special services/grievance coordinator at LLCC; Sarita Schoenbachler, a nurse at "LLCC CCS Wellpath"; Richard Lilly, an attorney for the Kentucky Justice and Public Safety Cabinet; Cookie Crews, Kentucky Department of Corrections (KDOC) Commissioner; Kevin Drake, an LLCC captain; Scott Jordan, the former Warden of LLCC; John Dunn, the Ombudsman of KDOC; Jesse Coombs, an LLCC Internal Affairs captain; and Mr.

---

[1] The Court ordered Plaintiff to file a second amended complaint on the Court's approved § 1983 form and directed that the second amended complaint would supersede the original and first amended complaint [DE 32].
[2] The Court granted Plaintiff's Motion to Supplement the Second Amended Complaint [DE 56].

Owens and Mr. Williams, LLCC Internal Affairs officers.  Plaintiff sues each Defendant in his or her individual and official capacities.

Where the complaint form asks if the filer has begun other lawsuits dealing with the same facts involved in this action, Plaintiff checks the box for "no" but states, "This case is related to the below mentioned suit that is seperated by jurisdiction.  This Court has jurisdiction because that is where events occurred."  Plaintiff lists the case as *Michael Eaves v. Rodney Ballard et al.*, Civil Action No. 5:17-CV-111-KKC, filed in the Eastern District of Kentucky.  Where the form asks for the disposition of the previous suit, Plaintiff states, "Judgment for Defendants.  Plaintiff is attempting to re-open for multiple reasons."  He reports that the Court of Appeals affirmed the judgment on November 4, 2020.

In the Second Amended Complaint, Plaintiff states that on May 19, 2020, one day after he filed a grievance against Defendant Moon, Defendant Moon "denied Plaintiff Eaves access to the prison's outgoing legal mail system."  Plaintiff asserts that he was attempting to mail correspondence to the Secretary of State of Washington and to Cody Pittman, a healthcare administrator at LLCC, and that he had affixed pre-paid postage to the envelopes.  He maintains that because the envelopes had pre-paid postage there was no requirement to inspect the mail but that he would not have objected to Defendant Moon opening the mail and "even told Defendant Moon that 2 letters were complaints against him."  Plaintiff contends that Defendant Moon's actions were in retaliation against him "for 2 reasons being #1-because Plaintiff appealed the USDC at Lexington's decision in Eaves v. Ballard, et al., and #2-because Plaintiff Eaves filed . . . grievance #20-455 against Def. Moon for Moon's actions of disclosing Plaintiff's private medical records to inmates without consent . . . ."

2

Plaintiff states that he had "both orally and expressly written" his request "to not allow inmate grievance aids access" to his medical records.  He asserts that on May 18, 2020, Defendant Moon "disregarded the instruction and gave the grievance . . . and attached medical records . . . to inmate grievance aid Gary Acree."  He asserts that "the records were only meant to be viewed by the medical grievance system."  He maintains that the records showed that he "was prescribed bilateral (both ears) hearing aids by someone with the authority to prescribe the medical prescriptions."

Plaintiff states that during the May 19, 2020, incident Defendant Moon "threatened Plaintiff multiple times.  Each time Def. Moon asked Plaintiff a question, when Plaintiff began answering, Defendant Moon forcefully stated, 'Stop arguing!' and threatened Eaves with disciplinary action."  Plaintiff contends that Defendant Moon "was attacking Plaintiff to provoke an argument from Eaves, who refused to argue with the Defendant, which Moon's actions are pattern and practice to have inmates who file complaints locked in segregation/RHU to hinder their complaints."  He states that Defendant Moon's "tone was harsh, abrasive, and threatening and Plaintiff feared for his safety so much, all he could say was to send his mail out legal mail."  Plaintiff reports that Defendant Moon threatened to throw his legal mail away and that Plaintiff asked an officer to retrieve his legal mail but Defendant Moon told him to leave the building.  Plaintiff alleges that Defendant Moon's actions have caused him "horrific nightmares and near constant headaches that medical cannot treat other than to alleviate pain with medications that injure Plaintiff's other vital organs."

Plaintiff also states that Defendant Moon issued a disciplinary report against him which caused the "incident to be non-grievable denying Plaintiff and others the grievance mechanism . . . ."  He maintains that Defendant Moon "instructs the inmates who work for him in the grievance

office/legal library to manipulate inmate's grievances and to protect prison official. And certain grievances such as disability discrimination . . . were not to proceed at all."

Plaintiff also states that he filed a grievance against Defendant Schoenbachler "because she overrode my doctor prescribed orders for bilateral hearing aids. Defendant Schoenbachler is a nurse and is unable to prescribe medication or to override any doctor's orders/prescription." He asserts that Defendant Schoenbachler "removed my right hearing aid that was doctor prescribed to prevent having to repair my broken right hearing aid. She said I only needed one hearing aid and wouldn't repair my broken aid." He states that he "is forced to turn away from people who are talking to him now so as to point the one aid at the person who is talking to him which is embarrassing to Plaintiff and considered rude by many people, creating a bad impression of Plaintiff." He also states that he is blind in his left eye. Plaintiff states that he told Defendant Schoenbachler that the KDOC was required to repair his broken hearing aid and that she refused to send it to be repaired.[3] Plaintiff states that when he filed a grievance "concerning disability discrimination," Defendant Moon "gave Plaintiff's private social security number and medical records to deter and stop Eaves from grieving the issue and cover up Def. Schoenbachler's actions under the color of law that she did."

Plaintiff again references the disciplinary report issued against him by Defendant Moon and states that it was dismissed but that "it still prevented Plaintiff Eaves from grieving the issues because he had received the disciplinary." He asserts that this "has become the mode and practice to use the [Prison Litigation Reform Act] [(]PLRA[)] to deny any grievance" and that he and other

---

[3] Plaintiff states that he "realleges and incorporates by reference" an affidavit he attaches as an exhibit to his complaint. To the extent that Plaintiff is attempting to assert any claim based on this exhibit or any other of his voluminous pages of exhibits, "[n]either the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief. It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format." *Laster v. Pramstaller*, No. 08-CV-10898, 2008 U.S. Dist. LEXIS 34080, at *4-5 (E.D. Mich. Apr. 25, 2008) (citation omitted).

inmates are "forced to spend $400.00 in federal court filing fees to redress their grievances instead of the nearly cost free process to correct issues through the grievance mechanism."  He states that inmates "cannot afford their Constitutional rights that have been alienated from them by these processes."

Plaintiff states that in "Oct-Nov 2020 Defendant Richard Lilly, a licensed attorney fiduciary agent of the KDOC and Plaintiff Eaves (by extension through his guardian the KDOC) was made aware of Defendant Moon's actions through court filings in Eaves v. Ballard, No. 5-17-CV-111-KKC and case no. 20-5277 as filed in the Sixth Circuit . . . ."  He maintains that Defendants Moon and Lilly were "made aware" that "3 times in a 6 month period, during Eaves' ADA civil action, that prison guards opened Plaintiff Eaves' locked cell door while Plaintiff was away so that other inmates could rob Plaintiff and to force Plaintiff to stop suing correctional officers at the KDOC and [Northpoint Training Center]."  Plaintiff asserts that he "still wakes up shaking with fear and headaches from the injuries this has caused his brain, from the constant torment inflicted by Dagon Moon and other prison staff who assisted him such as opening his cell to be robbed."  He states, "After Defendant Lilly was made aware of what was happening to Plaintiff Eaves, instead of intervening, he joined the events by neglecting his duty to protect Eaves, who is the ward of the state of Ky. and assigned the guardian KDOC to protect him, who is also the principal to Mr. Lilly."  He states that Defendant Lilly "ignored his duty to act (as an officer and attorney of the court) when fraud upon the Court and interference with a litigant is known."

Plaintiff alleges, "Since Plaintiff began this action in May 2021, prison officials Defendants Dagon Moon and Kevin Drake fraudulently detained Plaintiff, removing him from the honor program (on 6-15-21), and causing him to miss college program classes while in the 'hole' for 14 days."  He states that he was "again fraudulently detained by Internal Affairs Capt. Jesse

Coombs, IA.  Mr. Owens, and IA Mr. Williams on 8-4-21, and he was charged with making threatening statements and thrown in the 'hole' again."  Plaintiff reports that he "missed college assignments and risks getting kicked out because of fraudulent disciplinary report and missed work, and Def.'s actions."  Plaintiff also asserts that he sent three emails to Defendant Combs on July 30, August 3, and August 4, 2021, to request "protection from Defendants Moon and Drake." He states that "to prevent Plaintiff from requesting [protective custody] from Moon and Drake, [Defendants Coombs, Owens, and Williams] conspired to falsely accuse Plaintiff so as to place him in the 'hole' with a write up because Plaintiff cannot request PC from the hole, which means Moon and Drake can stay close to Plaintiff."  He states, "The reason this fraud was necessary is because Plaintiff is in a college program" that is not available at other facilities "so the conflict Plaintiff requested would require relocating Moon and Drake, not Plaintiff."  He reports that he learned this from another officer.

Plaintiff next asserts that on August 6, 2021, Warden Amy Robey "came to his cell in the 'hole' and asked me what happened to me and I told her."  Plaintiff states, "God bless her, she let me go back to the honor dorm.  Plaintiff does not know the outcome of these events but he prays that God touches other hearts as well."

Plaintiff states he "uncontrollably bursts into tears dozens of time while writing this and he wonders how long he is going to live."  He states that he has had two EKG's for chest pains and has lost almost 30 pounds "from this trauma."  He states that he is scared of police and corrections officers.  He states, "All Defendants owes protection to ward of state Plaintiff, and other similarly situated individuals and John Dunn (Def.) directs the grievance process."  He further states, "Plaintiff Eaves can never recover the lost benefits of the prison's outgoing legal mail system he was repeatedly denied access to on 5-19-20, including the benefits of the 'prison mailbox rule' for

proof of mailing and timing benefits, an assault on his constitutional rights and liberties."  He

asserts, "Plaintiff will never trust anyone with authority again because of Def.'s actions."  Plaintiff

states that Defendants "removed his abilities to successfully prosecute his claims in Eaves v.

Ballard, et al., and are causing worse than severe trauma to Plaintiff in this case which has just

begun."  He attaches a disciplinary report which Defendant Moon issued against another inmate

after he purportedly sent a letter to an attorney requesting representation to "show the pattern and

practice of Dagon Moon's actions."  Plaintiff states that that disciplinary report issued against the

other inmate was issued closely in time to the disciplinary report issued against him.  He also

asserts, "According to emails received that are between Defendants Moon and John Dunn,

Defendants Dunn and Moon work together to dismiss grievances or inmates, especially disability

discrimination complaints."

Plaintiff alleges violations of the First, Fourth, Eighth, and Fourteenth Amendments to the

Constitution, violation of Title II of the Americans with Disabilities Act, negligence, and

intentional infliction of emotional distress.  He also alleges violations of criminal statutes and

requests that the criminal violations be referred to the U.S. Attorney.  As relief, Plaintiff seeks

compensatory and punitive damages and declaratory and injunctive relief.

In Plaintiff's Supplement to the Second Amended Complaint [DE 55], he adds LLCC

Warden Robey and Attorney General Merrick Garland as Defendants.  He sues Defendant Robey

in her individual and official capacities and sues Defendant Garland in his official capacity only.

Therein, Plaintiff states that he requested to be transferred to the Western Kentucky

Correctional Complex to be close to his father and "to get away from Defendants" in 2021.  He

states, "Defendants knew Eaves' father was a retired correctional officer and that his father

couldn't make the long journey to visit Eaves so after Eaves refused to drop the civil complaint,

Defendants transferred Eaves to Lee County on the opposite side of the state from Eaves' family."

He continues, "Defendants Coombs, Williams, and Owen told Eaves he would never see Western

Kentucky again when Eaves asked for protective custody from Defendants and kept putting Eaves

in segregation/the 'hole' because he filed this action and to hurt Eaves' father too."  Plaintiff

maintains that his father "warned Plaintiff that Defendants in the correctional system would kill

Eaves and asked the Plaintiff to request a transfer so Eaves' father could see him again before they

'do what they do' to get rid of Plaintiff Eaves."  He states that on October 3, 2021, he called his

father and "told him that he would have to wait until I served out to see me and after the phone

call, Plaintiff's father killed himself because of the mental abuse the KDOC and Defendants had

put his son through and he couldn't bear life anymore."  He further states, "Eaves' father was

irreplaceable and no court ruling can fix this injury nor can any dollar amount bring him back."

In addition, Plaintiff attaches to the Supplement to the Second Amended Complaint a

"Notice to Attorney General pursuant to FRCP 5.1 – Constitutional Challenge to a statute . . ." in

which he states that he is providing notice that he is challenging the constitutionality of the PLRA.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer,

or employee, the trial court must review the complaint and dismiss the complaint, or any portion

of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon

which relief may be granted, or seeks monetary relief from a defendant who is immune from such

relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997),

*overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. ANALYSIS

#### A. Official-capacity claims

##### 1. State Defendants

"[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). A state, its agencies, and state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, the Eleventh Amendment acts as a bar to claims for monetary damages against a state, its agencies, and state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, Plaintiff's official-capacity claims for monetary damages against all Defendants who are employees of the Commonwealth of Kentucky, which appear to be all

Defendants with the exception of Defendant Schoenbachler, must be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from a defendant who is immune from such relief.

With regard to Plaintiff's claims for injunctive and declaratory relief, since filing this lawsuit, Plaintiff has been transferred from LLCC to the Lee Adjustment Center. Generally, an inmate's release from prison or transfer to another prison moots his request for injunctive and declaratory relief. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's § 1983 claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding that "to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail"). Because Plaintiff has been transferred, his requests for declaratory and injunctive relief regarding his incarceration at LLCC will be dismissed.

### 2. Defendant Schoenbachler

With respect to the official-capacity claim against Defendant Schoenbachler, Plaintiff indicates that she is employed by CCS, which the Court construes as Correct Care Solutions, or Wellpath, which are both private entities that contract with the KDOC to provide medical services to inmates. Therefore, Plaintiff's official-capacity claim against Defendant Schoenbachler is actually brought against her employer, either CCS or Wellpath. The same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation, such as CCS or Wellpath. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged

constitutional deprivation.  *Monell*, 436 U.S. at 691.  Thus, liability of a contracted private entity also must be based on a policy or custom of the entity.  *Street*, 102 F.3d at 818; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

To state a claim against a contracted entity, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).  The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the entity under § 1983.  *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiff does not allege that Defendant Schoenbachler acted pursuant to a custom or policy of CCS or Wellpath in denying his request to repair his right hearing aid.  Accordingly, Plaintiff's official-capacity claim against Defendant Schoenbachler must be dismissed for failure to state a claim upon which relief may be granted.

### 3. Defendant Garland

In the Supplement to the Second Amended Complaint, Plaintiff adds a claim against Defendant Garland in his official capacity only.  He provides a Notice to the Attorney General that he seeks to challenge the constitutionality of the PLRA.  However, as this Court has instructed Plaintiff previously in this action [DE 47], the constitutionality of the PLRA has been upheld in numerous cases.  *See, e.g.*, *Jones v. Bock*, 549 U.S. 199 (2007); *Woodford v. Ngo*, 548 U.S. 81 (2006); *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001); *Hampton v. Hobbs*, 106 F.3d 1281 (6th Cir. 1997); *Winburn v. Price*, No. 18-12807, 2019 U.S. Dist.

11

LEXIS149312, at *12 (E.D. Mich. Sept. 3, 2019); *Hasanati v. AG, Florida*, No. 15-21662, 2015 U.S. Dist. LEXIS 186702, at *2 (S.D. Fla. July 30, 2015).   Accordingly, Plaintiff's official-capacity claim against Defendant Garland will be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual-capacity claims

### 1. Defendant Moon

### a. Denial of access to outgoing mail

Plaintiff alleges that on May 19, 2020, Defendant Moon denied his request to send two pieces of legal mail in the outgoing prison mail system and identifies pieces of mail as letters to the Secretary of State for the State of Washington and to Cody Pittman, a health care administrator at LLCC.

Prisoners have a First Amendment right to send and receive mail.  *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).  However, "prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives."  *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003).  The Sixth Circuit has found a "heightened concern" where the mail is considered "legal mail."  *Id.* at 874 (citing *Kensu*, 87 F.3d at 174).  "The determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's 'legal mail' is a question of law properly decided by the court."  *Id.* at 873 (citing *Seal v. Morgan*, 229 F.3d 567, 580 (6th Cir. 2000)).  "Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights."  *Id.* at 874.  Courts afford First Amendment protections for legal mail where it may impact "the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts."  *Id.* at 874 (citing *Kensu*, 87 F.3d at 174); *see also Caldwell v. Ewing*, No. 03-1417, 2006 U.S. Dist. LEXIS 17047, at *17 (C.D. Ill. Mar. 24, 2006)

(finding that "letters to the NAACP and ACLU would not be considered legal mail since these are referral agencies" and "would be considered legal mail . . . if they were addressed to a specific attorney").

While Plaintiff calls the items he asked Defendant Moon to mail "legal mail," he does not describe the contents of the items, state what legal purpose he had for sending correspondence to the Washington Secretary of State or to an LLCC health care administrator, or state a specific reason the correspondence implicated his legal mail rights.[4]  Plaintiff has, therefore, failed to allege that the correspondence was in fact "legal mail" to be given heightened protection.  *See Longmire v. Mich. Dep't of Corr*., No. 20-1389, 2021 U.S. App. LEXIS 17180, at *4 (6th Cir. June 9, 2021) (affirming dismissal under § 1915A where the "complaint did not include specific facts about the nature of the communications" to show that the correspondence qualified as legal mail).

However, even if the Court presumed that the correspondence was in fact "legal mail," an isolated incident of mail tampering does not rise to the level of a constitutional violation.  *See, e.g.*, *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003) ("While a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation.  Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'") (citation omitted); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("[A] random and isolated incident [of mail interference] is insufficient to establish a constitutional violation."); *Washington v. Wilkins*, No. 3:16CV-P555-CRS, 2017 U.S. Dist. LEXIS 16754, at *5 (W.D. Ky. Feb. 7, 2017) ("Plaintiff does not allege routine opening or interference with his mail and, therefore, fails to state a claim of constitutional

---

[4] Plaintiff does not attach the letter addressed to the Washington Secretary of State to his Second Amended Complaint. He attaches an "Affidavit of Truth" addressed to Pittman as Exhibit J.  However, the affidavit describes the May 19, 2020, incident with Defendant Moon and does not appear to be the correspondence Plaintiff attempted to mail to Pittman.

proportions."); *Lloyd v. Herrington*, No. 4:11CV-P128-M, 2011 U.S. Dist. LEXIS 138728, at *4-5 (W.D. Ky. Dec. 2, 2011) ("Even if the Court interprets Plaintiff's complaint as alleging two instances of interference with his mail-one of the outgoing motion and one of his incoming piece of legal mail-the Court still finds that the two incidences taken together do not rise to a constitutional violation."); *Rinehart v. Beck*, No. 5:09-CT-3019-D, 2011 U.S. Dist. LEXIS 1037, at *16 (E.D.N.C. Jan. 5, 2011) ("Isolated incidents of mail mishandling do not rise to the level of a constitutional violation."). Upon review, the Court finds that Defendant Moon's purported failure to send out two pieces of legal mail on one occasion was an isolated incident and not sufficient to state a First Amendment claim.

Moreover, to the extent Plaintiff alleges that Defendant Moon violated his rights under the Fourth Amendment in the handling of his mail, the Fourth Amendment's proscription against unreasonable searches and seizures does not apply in the prison context. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."). Therefore, the Court finds that Plaintiff has failed to state a violation of the Fourth Amendment based on Defendant Moon's refusal to mail his letters.

For these reasons, Plaintiff's § 1983 claims based on the handling of his mail must be dismissed for failure to state a claim upon which relief may be granted.

### b. Denial of access to courts

Plaintiff also claims that Defendant Moon caused him to lose the "benefits of the 'prison mailbox rule' for proof of mailing and timing benefits" and hindered "his abilities to successfully prosecute his claims in Eaves v. Ballard, et al. . . ."

14

Prisoners have a constitutional right of meaningful access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  Meaningful access will vary with the circumstances, and officials are to be accorded discretion in determining how that right is to be administered.  *Id.* at 830-31; *John L. v. Adams*, 969 F.2d 228, 233-34 (6th Cir. 1992).  To state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement.  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  That is, there must be an actual injury, and no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented."  *Id.* at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim").

Plaintiff fails to allege how Defendant Moon's refusal to mail Plaintiff's correspondence to the Washington Secretary of State or to an LLCC health care administrator caused him to lose "the benefits of the 'prison mailbox rule.'"  He does not state what, if any, deadline he missed. Moreover, he fails to allege how these two items were to be used in litigating his claims in *Eaves v. Ballard* or how Defendant Moon's actions may have led to actual injury in the form of a missed deadline in that suit.  Therefore, Plaintiff's claim against Defendant Moon alleging denial of access to courts must be dismissed for failure to state a claim.

### c. Retaliation

Plaintiff also alleges that Defendant Moon refused to send the above-mentioned correspondence in retaliation for Plaintiff appealing the dismissal of his suit *Eaves v. Ballard* and for Plaintiff filing a grievance against Defendant Moon the previous day for disclosing his private

15

medical records to grievance aides without his consent.  Plaintiff also alleges, "Since Plaintiff began this action in May 2021, prison officials Defendants Dagon Moon and Kevin Drake fraudulently detained Plaintiff, removing him from the honor program (on 6-15-21), and causing him to miss college program classes while in the 'hole' for 14 days."

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Construing the complaint broadly, as the Court is required to do at this stage, the Court finds that Plaintiff's allegations state a plausible claim of retaliation against Defendant Moon.  Therefore, the Court will allow Plaintiff's retaliation claim to proceed against Defendant Moon in his individual capacity.[5]  In allowing this and other claims to proceed, the Court passes no judgment on their merit or ultimate outcome.

### d. Disclosure of personal information

Plaintiff also alleges that Defendant Moon disclosed his social security number and medical records to inmate grievance aides when he allowed them to process his grievance against Defendant Schoenbachler for denying his request to repair his right hearing aid.

The Sixth Circuit has recognized an informational-privacy interest protected by the Fourteenth Amendment in only two instances:  "(1) where the release of personal information could lead to bodily harm . . . and (2) where the information released was of a sexual, personal, and humiliating nature."  *Wiles v. Ascom Transp. System, Inc.*, 478 F. App'x 283, 295 (6th Cir. 2012) (quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (citations omitted)); *see*

---

[5] The Court will also allow a retaliation claim to proceed against Defendant Drake. *See infra* § III.B.2.

*also Kenny v. Bartman*, No. 16-2152, 2017 U.S. App. LEXIS 16640, at *17 (6th Cir. 2017) (repeating that the Sixth Circuit has recognized a constitutionally protected informational-privacy interest in only these two circumstances).

Under this standard, the Sixth Circuit has held that public disclosure of a person's social security number did not implicate any privacy interest that is "implicit in the concept of ordered liberty" and thus did not establish a violation of rights protected by the Due Process Clause of the Fourteenth Amendment. *Lambert*, 517 F.3d at 436, 442-46; *see also Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir. 2007) (release of prison guards' birth dates and social security numbers did not rise to level of a constitutional violation). Moreover, Plaintiff fails to allege, and the Court cannot discern, how the disclosure of his medical records concerning his need for hearing aids could lead to bodily harm or be of a sexual, personal, or humiliating nature. *See Kenny*, 2017 U.S. App. LEXIS 16640, at *17-18 (affirming dismissal where the plaintiff "[did] not allege that disclosure of the pictures put[] him at risk of bodily harm or involve[] information of a sexual, personal, or humiliating nature"); *cf. Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (disclosure of "highly personal and extremely humiliating details of a rape" violated privacy rights).

To the extent Plaintiff may argue that the disclosure of his medical records violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. §§ 1320a *et seq*., a violation of rights under HIPAA does not give rise to a private right of action. *See Pitchford v. Metro Nashville Police Dep't*, No. 3:19-cv-00256, 2021 U.S. Dist. LEXIS 113604, at *8 (M.D. Tenn. Jun. 17, 2021) (finding that HIPAA "does not afford individuals a private right of action") (collecting cases).

Accordingly, the Court finds that Plaintiff's claims based on the disclosure of his social security number and medical records to inmate grievance aids must be dismissed for failure to state a claim.

### e. Verbal threats and abuse

Plaintiff also alleges that during the May 19, 2020, incident, Defendant Moon "forcefully stated 'Stop arguing![,]'" threatened him with disciplinary action, and used a "harsh, abrasive, and threatening" tone.

Convicted inmates are protected from cruel and unusual punishment by the Eighth Amendment.  However, the use of threatening or harassing language by a prison official, although unprofessional and deplorable, does not rise to a constitutional dimension.  *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not rise to the level of a constitutional claim); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (holding that threat to spray inmate with mace did not violate Eighth Amendment).  Therefore, Plaintiff's allegations against Defendant Moon based on verbal threats and abusive language will be dismissed for failure to state a claim upon which relief may be granted.

### *f. Denial and handling of grievances*

Plaintiff alleges that Defendant Moon issued him a disciplinary report that caused "the incident to be non-grievable" and denied him "the grievance mechanism."  He also asserts that Defendant Moon instructs inmate grievance aids to manipulate inmates' grievances.

The Court construes the allegations as asserting claims for violation of due process under the Fourteenth Amendment.  However, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure."  *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).  By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his handling of the plaintiff's grievance.  "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances.  *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim.").  Therefore, Plaintiff's claims concerning the denial and handling of his grievances must be dismissed for failure to state a claim upon which relief may be granted.

### *g. Failure to act on robbery of Plaintiff's cell*

Plaintiff also alleges that Defendant Moon was "made aware" that "prison guards opened Plaintiff Eaves' locked cell door while Plaintiff was away so that other inmates could rob Plaintiff and to force Plaintiff to stop suing correctional officers at the KDOC and [Northpoint Training Center]."

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see Shehee*, 199 F.3d at 300 (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).  Furthermore, Plaintiff's allegations are wholly conclusory and lacking in sufficient facts to state a constitutional violation. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 555, 557)).  Plaintiff fails to allege any facts to support his conclusion that Defendant Moon allowed guards to open Plaintiff's cell so that inmates could rob him.  For these reasons, these claims must be dismissed for failure to state a claim upon which relief may be granted.

### 2. Defendant Drake

As stated above, Plaintiff alleges, "Since Plaintiff began this action in May 2021, prison officials Defendants Dagon Moon and Kevin Drake fraudulently detained Plaintiff, removing him from the honor program (on 6-15-21), and causing him to miss college program classes while in the 'hole' for 14 days."  Upon review, the Court finds that these allegations state an actionable claim of retaliation against Defendant Drake.  Therefore, the Court will allow Plaintiff's retaliation claim to proceed against Defendant Drake in his individual capacity.

### 3. Defendants Coombs, Owens and Williams

Plaintiff alleges in the Second Amended Complaint that Defendants Coombs, Owens, and Williams "fraudulently detained" him and put him in the hole on August 4, 2021, for requesting protective custody from Defendants Moon and Drake.  In the Supplement to the Second Amended

20

Complaint, Plaintiff alleges that Defendants Coombs, Owens, and Williams "kept putting [him] in segregation/the 'hole'" because he filed this action.  Upon review, the Court finds that these allegations state plausible claims of retaliation against Defendants Coombs, Owens, and Williams.  Thus, the Court will allow retaliation claims to proceed against Defendants Coombs, Owens, and Williams in their individual capacities.

#### 4. Defendant Schoenbachler

Plaintiff alleges that Defendant Schoenbachler "overrode" his doctor's evaluation and order for bilateral hearing aids and denied Plaintiff's request for his right hearing aid to be repaired.

#### a. Deliberate indifference to a serious medical need

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  An Eighth Amendment claim for deliberate indifference to a serious medical need has both an objective and a subjective component.  *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018).  To meet the objective component, the plaintiff must show that the medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834.  To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

Upon review, the Court finds that Plaintiff's allegations state a plausible Eighth Amendment claim against Defendant Schoenbachler.  Therefore, the Court will allow his claim of deliberate indifference to a serious medical need to proceed against Defendant Schoenbachler in her individual capacity.

### b. Violation of ADA

To the extent Plaintiff alleges a claim against Defendant Schoenbachler based on violation of the ADA, Plaintiff cannot assert an individual-capacity claim against Defendant Schoenbachler under the ADA.  Only a "public entity" may be sued under the ADA; the term "public entity" includes "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1).  "[T]here is no individual liability under Title II of the ADA."  *Sagan v. Sumner Cnty. Bd. of Educ.*, 726 F. Supp. 2d 868, 875 (M.D. Tenn. 2010); *see also Williams v. McLemore*, 247 F. App'x 1, 5-6 (6th Cir. 2007) (holding that public employees may not be sued in their individual capacity under Title II of the ADA).

Moreover, even if Plaintiff could assert a claim under the ADA against Defendant Schoenbachler in either her individual or official capacity, he has failed to allege facts showing that she discriminated against him on the basis of his alleged disability.  "The ADA prohibits discrimination because of disability, not inadequate treatment for disability."  *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. . . . The ADA does not create a remedy for medical malpractice.")).

Therefore, Plaintiff's claim against Defendant Schoenbachler under the ADA must be dismissed for failure to state a claim.

### 5. Defendant Lilly

Plaintiff alleges that Defendant Lilly represented employees of the KDOC in his previous case before the Eastern District of Kentucky, *Eaves v. Ballard*.  He alleges that Defendant Lilly, along with Defendant Moon, was "made aware" that prison guards opened Plaintiff's cell door

while he was away so that other inmates could rob him.  He claims that after Defendant Lilly was made aware of it, "instead of intervening, he joined the events by neglecting his duty to protect Eaves, who is the ward of the state of Ky. and assigned the guardian KDOC to protect him, who is also the principal to Mr. Lilly."  He states that Defendant Lilly "ignored his duty to act (as an officer and attorney of the court) when fraud upon the Court and interference with a litigant is known."

Plaintiff's § 1983 claims against Defendant Lilly based on his failure to act after Plaintiff's cell was robbed must be dismissed for the same reasons that the claims were dismissed against Defendant Moon.  *See supra* § III.B.1.g.  Moreover, Defendant Lilly, as opposing counsel to Plaintiff in his prior lawsuit owes no duty of care, fiduciary or otherwise, to Plaintiff.  *See Young-Bey v. Robinson*, No. 09 1669, 2009 U.S. Dist. LEXIS 79573, at *1-2 (D.D.C. Sept. 2, 2009) ("Plaintiff's claims predicated on a duty of care that opposing counsel in his civil lawsuit owed him is simply frivolous.").

Therefore, Plaintiff's § 1983 and negligence claims against Defendant Lilly must be dismissed for failure to state a claim upon which relief may be granted.

### 6. Defendants Crews and Jordan

The Court has reviewed the Second Amended Complaint and the Supplement to the Second Amended Complaint and finds no allegations of specific action taken by Defendant Crews or Jordan to violate Plaintiff's rights.

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286

F.3d 834, 842 (6th Cir. 2002)).  Where a person is named as a defendant without an allegation of specific conduct, the claim against the defendant is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Reilly v. Vadlamudi*, 680 F. 3d 617, 626 (6th Cir. 2012) ("Plaintiff must state a plausible constitutional violation against each individual defendant - the collective acts of defendants cannot be ascribed to each individual defendant.") (citations omitted); *Griffin v. Montgomery*, No. 00-3402, 2000 U.S. App. LEXIS 30782, at *7 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).  Therefore, Plaintiff's claims against Defendants Crews and Jordan must be dismissed for failure to state a claim.

### *7. Defendant Dunn*

Plaintiff's only allegations concerning conduct by Defendant Dunn are that he "directs the grievance process" and that, "According to emails received that are between Defendants Moon and John Dunn, Defendants Dunn and Moon work together to dismiss grievances or inmates, especially disability discrimination complaints."

As stated above, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter*, 532 F.3d at 576 (quoting *Shehee*, 199 F.3d at 300).  Therefore, Plaintiff's claims against Defendant Dunn based on his role in the grievance process must be dismissed for failure to state a claim.  Moreover, with regard to Plaintiff's allegation regarding emails between Defendants Moon and Dunn, the allegations are entirely conclusory and lacking in factual specifics to state a claim.  *See Iqbal*, 556 U.S. at 678. For these reasons, Plaintiff's claims against Defendant Dunn must be dismissed for failure to state a claim.

### 8. Defendant Robey

Plaintiff added Defendant Robey as a Defendant in the Supplement to the Second Amended Complaint.  However, the Supplement to the Second Amended Complaint alleges no specific allegations against her.  Therefore, Plaintiff fails to state a claim against Defendant Robey.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of plaintiff's claims for failure to state a claim upon which relief may be granted where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).  Moreover, Plaintiff cannot assert a § 1983 claim against Defendant Robey based merely on her role as Warden because the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors.  *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Therefore, Plaintiff's claims against Defendant Robey must be dismissed for failure to state a claim.

### 9. Criminal violations

Plaintiff also alleges violations of criminal statutes and requests that the criminal violations be referred to the U.S. Attorney.  "It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General."  *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch.").  As this Court has no authority to act as a prosecutorial entity, it has no jurisdiction to refer any defendant or individual to the U.S. Attorney's Office for criminal prosecution.  *See United States v. Nixon*, 418 U.S. 683, 693 (1974) ("Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.").

Therefore, any claims based on violation of criminal statutes must be dismissed for failure to state a claim.

### 10. Intentional infliction of emotional distress

Finally, Plaintiff alleges claims for intentional infliction of emotional distress.  To state a claim for intentional infliction of emotional distress under Kentucky law, a plaintiff must allege that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe.  *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788-89 (citing *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)).

Upon consideration, the Court finds Plaintiff has failed to allege that any Defendant's conduct was so outrageous and intolerable that it offended the generally accepted standards of decency and morality.  Moreover, reading the complaint in a light most favorable to Plaintiff, he has at best made only conclusory and factually unsupported allegations that Defendants' alleged conduct caused him to suffer mental distress.  Once again, conclusory allegations "devoid of 'further factual enhancement[]'" are not sufficient to state a claim.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  For these reasons, Plaintiff's claims for intentional infliction of emotional distress will be dismissed for failure to state a claim.

## IV.  CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

(1)  Plaintiff's official-capacity claims against all Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking damages from a defendant who is immune from such relief.

(2)  Plaintiff's individual-capacity claims against Defendant Moon, with the exception of his retaliation claim, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

(3)  Plaintiff's individual-capacity claims against Defendants Lilly, Crews, Jordan, Dunn, and Robey and his claims based on criminal violations and intentional infliction of emotional distress are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

(4)  The **Clerk of Court is directed to terminate** Defendants Lilly, Crews, Jordan, Dunn, Robey, and Lauren Plappert[6] as Defendants in the docket sheet as no claims remain against them.

(5)  The **Clerk of Court is directed to add** Kevin Drake, Jesse Coombs, Mr. Owens, and Mr. Williams as Defendants in the docket sheet.

(6)  The Court has allowed retaliation claims to proceed against Defendants Moon, Drake, Coombs, Owens, and Williams in their individual capacities and a claim of deliberate indifference to a serious medical need to proceed against Defendant Schoenbachler in her individual capacity.

---

[6] Plaintiff did not name Plappert as a Defendant in the Second Amended Complaint or Supplement to the Second Amended Complaint.  Therefore, the Court presumes that Plaintiff no longer wishes to allege claims against her.

The Court will enter a separate Service and Scheduling Order to govern the claims that have been permitted to proceed.

Date:   March 15, 2023

Rebecca Grady Jennings, District Judge
United States District Court

cc:   Plaintiff, *pro se*
      Defendants
      General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel

A961.010

28